IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 11-cv-00669-RBJ

CHARLES F. OVERTON,

     Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security Administration,

     Defendant.

---

## ORDER

This matter is before the Court on review of the Commissioner's decision denying plaintiff Charles Overton's application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act ("the Act"). Jurisdiction is proper under 42 U.S.C. § 405(g).

**Facts**

Charles Overton was born on November 8, 1947, thus making him 64 years old at the present time. At some point after his discharge from the navy he became a computer programmer and worked in that field for approximately 20 years. With the exception of a small amount of earnings reported in 2003, he has not worked since 2001. *See* R. 70-71. He indicates that he has been unable to work during the last 11 years due to pain in his lower back and abdominal area and the effects of narcotic pain medication. Nevertheless, he did not file a claim for Social Security disability benefits until October 15, 2007. In that claim he states that he became disabled and unable to work as of March 15, 2006. R. 94. R. 94.

The ultimate question raised by his claim is whether he was disabled, within the meaning

of the Social Security Act, between March 15, 2006 (claimed date of onset of disability) to September 30, 2007 (date when he was last insured for disability benefits).  The record of this case shows that during that period of time Mr. Overton repeatedly was seen at the Veterans' Affairs Medical Center ("VAMC") – nearly every month and sometimes several times in a month -- for complaints of abdominal and back pain and related medication.  *See* R. 173-307. He was also seen at least twice (November 2006 and August 2007) in the Emergency Department of the St. Thomas More Hospital in Canon City, Colorado.  R. 133-62.  I do not profess to have the expertise to analyze these voluminous records.  However, the general tenor of them is that that Mr. Overton continually reported severe and debilitating pain, sometimes measuring "10" on the pain scale; that examinations and testing revealed kidney stones and degenerative disc disease but otherwise did not provide a clear, objective medical explanation for the pain; and that Mr. Overton was prescribed a variety of pain medications that appear to have been at least somewhat effective in reducing his pain.

On September 20, 2007 Mr. Overton was seen by Velma Campbell, M.D., an occupation medicine specialist, on a referral from a Family Nurse Practitioner at the VAMC.  Mr. Overton described a history of back pain dating back to 1994; abdominal pain including the passing of multiple kidney stones beginning in 2006; and resulting constant daily back and abdominal pain. R. 169.  He described his pain as causing him to curl up in pain lasting from eight to 48 hours four times a week, sometimes associated with lightheadedness that possibly was due to medication.  He indicated that he did not work, due to the pain and the medications, and that although he was independent in activities of daily living, he was depressed about the reduction in his activities and the intractable pain.  *Id*.  Dr. Campbell also reviewed medical records that had been provided and conducted a physical examination.

Her diagnosis was that Mr. Overton suffered from "(1) Chronic, intractable flank pain, with history of chronic, frequent renal lithiasis and UTI; (2) Chronic back pain, with referred pain to the lower extremities, degenerative joint disease; (3) Hearing loss, sensorineural, probably hearing related; (4) History of gout; and (5) Psychological factors associated with medical and psychological conditions." R. 171. In explanation of that diagnosis, Dr. Campbell cites Mr. Overton's statement that he suffered from pain that incapacitated him for most of four days a week. She noted, however:

> Evaluation has not so far explained the pain, but is still in progress. Further evaluation might include abdominal MRI, additional renal studies, and consultations. At this time his condition would not be consistent with full time sedentary employment, as his condition produces incapacity several days a week. When not having an exacerbation of symptoms, he would be limited in standing, walking, and postural activities to less than 3 hours a day, and in lifting and carrying to 20# less than 2 hours a day and 10# less than 4 hours a day. Use of the upper extremities is not otherwise impaired. He is independent in activities of daily living. There is no indication of cognitive impairment. . . . . Psychological factors are probably affecting the patient's functional status, including chronic pain and medical conditions, as well as chronic depression. The patient has concerns related to disability issues and those are addressed. The patient should continue with medical care and evaluation and should ask his doctors about abdominal MRI and other tests, not assume that his back or renal stones are the only problems.

R. 172.

Mr. Overton then filed his claim for Social Security disability benefits on October 15, 2007. In a "Disability Report," submitted by Mr. Overton on or about October 18, 2007 in support of his claim, Mr. Overton stated:

> I have chronic pain in the lower back, abdominal area, kidney stones and pain in lower back, degenerating disk, abdominal pain [,] mesenteric panniculitis. I am unable to sleep due to the pain. I get between 4 and 5 hours at a time. I have high blood pressure. I suffer from gout and hearing loss due to noise exposure.

R. 94.

In response to a question about how those conditions limit his ability to work, he stated:

3

> I am unable to focus or concentrate.  The pain medication limits my ability to drive to work.  I am limited to my home due to the pain.  I cannot walk without pain.

*Id.*

In the same Report he described the work he formerly had done as a computer programmer as requiring one hour each day of walking, one hour standing, six hours sitting, frequent lifting of objects weighing less than 10 pounds and carrying computers from 10 to 30 feet four to five times a day.  He indicated that the heaviest weight he lifted was 50 pounds.  R. 95.

Mr. Overton filled out a "Function Report – Adult" on a Social Security Administration form on November 12, 2007.  This report described his daily activities in more dire terms than it appears he might have done with Dr. Campbell.  He said that he wakes up, has toast and coffee, takes pain medication, and then reads or watches TV until 9:00 a.m.; takes a 10-15 minute walk, then reads or watches TV until noon; has lunch (fixed by his wife); reads or watches TV until 4:00 p.m., and takes another 10 to 15 minute walk; has dinner (fixed by his wife); reads or watches TV until 8:00 p.m.; takes more pain medication and goes to bed.  R. 102.

His wife takes care of the pets.  He cannot drive or do such things as hiking, yard work, panning for gold, target shooting or various house projects that he formerly could do.  He sleeps poorly, usually getting no more than four to five hours of sleep.  H can dress himself but very slowly; he showers only when his wife is nearby in case he loses his balance; he doesn't shave; he feeds himself, but his wife prepares all meals (but he can plug in the coffee pot and make toast); he only uses the toilet when his wife is nearby, as he has passed out on the toilet before; he occasionally drives, but when he is taking pain medication (which he appears to do virtually continuously) his wife drives him; he does only emergency household repairs, and that rarely happens; he shops by computer and in stores but no more than 10 minutes once a month in a

store. R. 102-06.

He indicated that he is "mostly house bound," and might not leave the house for a week at a time. He has no social activities except on the phone or email. R. 106-07. His condition affects any physical activity including sitting. Movement of his abdominal area puts pressure on his right kidney causing excruciating pain. Pain medication causes dizziness and loss of concentration, and it leaves him feeling as if he is moving through a fog. R. 107. If he walks 10 to 15 minutes he would need to rest 45 minutes to be able to resume walking. His attention span is about five minutes, and his comprehension level is down. He handles stress poorly, and he has concerns because of "lack of knowledge on the part of the medical community, lack of a treatment plan, etc. – it seems on many occasions death is just around the corner." R. 108.

The agency submitted Mr. Overton's medical records for a review by Karl T. Chambers, M.D., apparently an agency doctor. Dr. Chambers completed a "Case Analysis," R. 308-09, and a "Physical Residual Functional Capacity Assessment," R. 310-17, on December 4, 2007. A claimant's "residual functional capacity" or "RFC" is determined by weighing a number of factors, as set forth in 20 C.F.R. §404.1545, including the claimant's "ability to meet the physical, mental, sensory, and other requirements of work" after weighing "all of the relevant medical and other evidence" in the claimant's case record. *Id.* Dr. Chambers concluded that Mr. Overton has a "possible sed (sedentary) RFC" based upon chronic low back pain from degenerative disk disease and chronic abdominal pain from kidney stones and possible mesenteric panniculitis. R. 308. He suggested a laparoscopic biopsy, and if mesenteric panniculitis is confirmed, steroid treatment. *Id.* at 308, 311. He concluded that Mr. Overton can lift 10 pounds occasionally, less than 10 pounds frequently, stand at least two hours in an eight-hour day, sit about six hours in an eight-hour day, push or pull without limit. R. 311.

On December 17, 2007 a vocational specialist within the Social Security Administration expressed the opinion, based on Dr. Chambers' findings, that Mr. Overton was limited to "sedentary" work, and that he should avoid driving because of the side effects of his medications.  R. 110.  His past work as a computer programmer, as he had described it, was too strenuous for him.  R. 111.  However, computer programming as normally done in the national economy was within his RFC.  *Id.*

Armed with that information, and noting that the agency had also received information from Dr. Campbell (but no report), an ENT specialist (concerning hearing loss), St. Thomas More Hospital, and the VAMC, an SSA Regional Commissioner denied Mr. Overton's claim on December 20, 2007.  R. 38.  The denial stated:

> While you still experience pain in your lower back, there is no severe muscle weakness or loss of feeling in your legs.  Despite some problems in your abdomen, there has (sic) been no significant problems to prevent you from working.  The evidence shows no other condition which significantly limits your ability to work.  We have considered your pain in reviewing your claim for disability.
>
> Based on your description of your past work, we realize you were unable to return to your past work as you described it, but it has been determined that you had the capacity to perform the demands of your past work as a Computer Programmer, as it is generally performed.  The evidence indicates you did this type of work for several years.  \
>
> The evidence does not show that your condition was disabling on or before 9/30/07, the date that your Social Security Disability coverage ended.

*Id.*

Mr. Overton appealed, and a hearing by an Administrative Law Judge was held on July 16, 2009.  Mr. Overton testified that he had been unable to work since March 15, 2006 "[p]rimarily due to pain and pain medication and side effects."  R. 23.  The pain is located in the upper right and lower right quadrants of his abdominal area, the kidney area, and along his ribs.  *Id.*  He claimed March 15, 2006 as the onset date because that was when he was seen at the in

VAMC's emergency room for excruciating pain.  *Id.*   He has been taking narcotic pain

medication daily, at least since July 2007, including at various times Morphine, Vicodin,

Percocet and Phentonyl.  R. 26.

The side effects of these medications include nausea, headaches, dizziness and sleepiness.

R. 27.  He testified that, because of the pain and medication, he was completely unable to work

in 2007.  *Id.*  Testimony concerning daily living activities was sparse.  Mr. Overton testified that

he puts TV dinners in the microwave, but otherwise his wife does the cooking.  R. 29.  He

occasionally goes shopping with his wife.  R. 30.  Lifting and carrying things cause his back "to

hurt like crazy," especially if he is having a kidney stone.  *Id.*  Problems associated with kidney

stones have been a continual issue except for the periods of March, April, May and December of

2008.  R. 31.

After hearing Mr. Overton's testimony, the ALJ heard testimony from a vocational expert

who had reviewed Mr. Overton's work history.  R. 32.  The ALJ posed, as a hypothetical

question, whether a person with Mr. Overton's age and educational background who was limited

to a full range of sedentary work could do Mr. Overton's past work as a skilled computer

programmer.  The expert responded "yes sir."  R. 32-33.  On the other hand, when the ALJ

expanded the hypothetical to include a need to be totally off task, due to abdominal pain and/or

kidney stone pain, up to four or five days in a week's period of time, which would occur on an

unpredictable basis four to five times during a year, the expert testified that such a person could

not do Mr. Overton's past work or any competitive employment.  R. 33.

Mr. Overton's attorney then asked whether a hypothetical claimant who would "twice a

month need to take Morphine, Percocet, a Phentonyl patch and/or Vicodin" would be unable to

do that type of work.  The ALJ disallowed the question, because it required the vocational expert

to evaluate the side effects of medications.  R. 34.  The attorney modified his question to ask whether a hypothetical claimant who had periods of drowsiness and lack of concentration at least two or three times a month would be unable to do work as a computer programmer.  The expert's response, though partially inaudible, appears to have indicated that that would not prevent him from working as a computer programmer.  R. 34-35.  The attorney further modified his question to indicate that two or three times per month the hypothetical person would be unable to concentrate for a full day each time.  The expert indicated that this would be inconsistent with competitive work.  R. 35.

The Administrative Law Judge ("ALJ"), William Musseman, issued a written, unfavorable decision on the claim on September 18, 2009.  R. at 8-17.  He followed the five-step evaluation process provided at 20 C.F.R. § 404.1520(a)(4).  At step one he found that Mr. Overton was not engaged in substantial gainful activity during the relevant time period, March 15, 2006 to September 30, 2007.  R. at 13.  At step two he determined that Mr. Overton had two severe impairments: degenerative disc disease of the lumbar spine and kidney stones.  *Id.*  At step three he found that none of the severe impairments met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*  At step four he determined that Mr. Overton had the RFC to complete the full range of sedentary work as defined in 20 C.F.R. 404.1567(a).  R. 15-16.

Based on that finding at step four, and implicitly the opinion of the vocational expert, ALJ found determined that Mr. Overton could perform the essential functions of his past relevant work, computer programmer.  R. 16.  He found that Mr. Overton could perform that work both as he actually performed it and as it is generally performed.  *Id.*  Therefore, he concluded, " [t]he claimant was not under a disability, as defined in the Social Security Act, at any time from

March 15, 2006, the alleged onset date, through September 30, 2007, the date last insured (20 CFR 404.1520(f))."  R. at 17.

Mr. Overton then filed for administrative review of the ALJ decision.  R. 6.  The "Appeals Council" in the Social Security Administration's Office of Disability Adjudication and Review denied his request for review on February 7, 2011.  Therefore, the ALJ's decision became the final decision of the Commissioner.  *Wilkins v. Sec'y, Dep't of Health and Human Serv.*, 853 F.2d 93, 96 (10th Cir. 1991).  Mr. Overton then filed his complaint in this Court on March 17, 2011.

The appeal was fully briefed upon the filing of plaintiff's reply brief on October 21, 2011.  Upon the filing of this order it will have taken approximately four years and eight months to get from the filing of his original claim to a decision by a court.  Regardless of the merits of the claim, the delay, which in this Court's experience is not particularly unusual, reflects poorly on the entire system.  To the extent this Court has contributed to that delay, Mr. Overton has my apology.

### Standard of Review

This Court does not consider the case de novo.  Rather, this Court functions as a court of appeal and bases its review on the administrative record and briefs submitted by the parties. Whether the Court agrees with the decision of the ALJ is not the issue.  The Court's role is to determine whether the record contains substantial evidence to support the Secretary's decision and whether the Secretary applied the correct legal standards.  *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994); *Rickets v. Apfel*, 16 F. Supp. 2d 1280, 1287 (D. Colo. 1998).  Substantial evidence requires "more than a scintilla, but less than a preponderance."  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2007).  A decision cannot be based on substantial evidence if "it is

overwhelmed by other evidence in the record. . . ."  *Bernal v. Bowen,* 851 F.2d 297, 299 (10th

Cir. 1988).  Evidence is not substantial if it "constitutes mere conclusion."  *Musgrave v. Sullivan*,

966 F.2d 1371, 1374 (10th Cir. 1992).

**Conclusions**

Mr. Overton essentially makes two arguments.  First, he argues that there was no

evidence that he could perform his past relevant work in the manner that he performed that work.

Second, he argues that the ALJ's determination that Mr. Overton had an RFC to perform the full

range of sedentary work was not supported by substantial evidence.

**I.      PAST RELEVANT WORK AS ACTUALLY OR GENERALLY PERFORMED.**

There is no evidence in the record to support the ALJ's finding that during the relevant

time period of March 2006 through September 2007 Mr. Overton could perform the work of a

computer programmer as he actually performed it.  Mr. Overton represented, and there is no

contrary evidence, that among other things, he was required to lift up to 50 pounds.  Dr.

Chambers, who conducted a "Case Analysis" and a "Physical Residual Functional Capacity

Assessment" for the SSA on December 4, 2007, concluded that he was able to lift 10 pounds

occasionally, less than 10 pounds frequently.  The SSA vocational specialist who expressed

opinions on December 17, 2007 based on the Chambers assessment found that Mr. Overton's

past relevant work, as he described it, was too strenuous for him.  Dr. Campbell's opinion

concerning what Mr. Overton could do if he did not have an exacerbation of symptoms does not

support an ability to lift 50 pounds.  There is nothing in the record that suggests that he could lift

50 pounds during the relevant period.  Defendant does not argue otherwise on this appeal.

However, the Social Security Administration considers relevant vocational evidence

"either as the claimant actually performed it or as generally performed in the national economy."

20 C.F.R. § 416.960(b)(2).  Likewise, Social Security Ruling 82-61 states: "A former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy.  Under this test, if the claimant cannot perform the excessive functional demands and/or duties actually required in the former job but can perform the functional demands and job duties as generally required by employers through the economy, the claimant should be found to be 'non-disabled.'"  1982 WL 31387.  Thus, a claimant is not disabled if at step four of the evaluation process it is shown, based upon his RFC, that he can perform "1. [t]he actual functional demands and job duties of a particular past relevant job; *or* 2. [t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Andrade v. Secretary of Health and Human Services*, 985 F.2d 1045, 1050 (10th Cir. 1993) (emphasis added).

Accordingly, the Court concludes that if Mr. Overton was able to perform the work of a computer programmer as such work is generally performed, according to the United States Department of Labor, THE DICTIONARY OF OCCUPATIONAL TITLES (4th ed. 1991) ("DOT") on which both parties rely, he would not be considered to be disabled at step four of the five-step test.  The DOT describes the job of computer programmer as skilled and requiring sedentary exertion.  DOT 030.162-110, 1991 WL 646542.  It is undisputed that Mr. Overton has the necessary skill.  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying small articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. 404.1567(a).

II.     **THE ALJ'S RFC DETERMINATION.**

A.  Credibility.

Essentially, this dispute comes down to a matter of credibility.  If Mr. Overton's description of the degree of incapacitation that he experienced in 2006 and 2007 because of pain and the effects of pain medication were accepted, then he could not perform the work of a computer programmer as such work is normally performed.  Dr. Campbell said so.  The vocational expert who testified at the ALJ hearing essentially said so, even extending his opinion to exclude "any competitive work."  R. 33.  Frankly, it's a matter of common sense.

However, the ALJ found that Mr. Overton's testimony was not credible.  He stated, "[b]ased on the medical evidence, testimony and observation of the claimant by the Administrative Law Judge, it is found the claimant's condition does not meet or equal any of the listings found in Appendix I.  R. 15.  The ALJ noted, "whenever statements about the intensity, persistence, or functionality limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record."  R. 16.  He continued, "the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  *Id.*  Finally, he added that "the above residual functional capacity assessment is supported by the claimant's daily living activities.  He has spent time on his personal computer educating himself about kidney stones and other medical conditions he has."  *Id.*

Generally an appellate court should give substantial deference to the credibility determination of the trier of fact. *See, e.g., Talley v. Sullivan,* 908 F.2d 585, 587 (10th Cir. 1990). The trier of fact is in a better position to assess an individual's manner and demeanor on the witness stand, strength of memory, and other factors that typically bear on the credibility of a witness. Accordingly, the ALJ's credibility determination, particularly to the extent it was based on his observation of Mr. Overton as a witness during the hearing, is entitled to considerable deference.

On the other hand, to the extent that the credibility determination was made based on the inconsistency between Mr. Overton's description of his degree of incapacity, on the one hand, and the objective medical evidence and his actual ability to carry out daily living activities, on the other hand, then this Court is in a position to review that determination.

B. Evidence Supporting the ALJ's Decision.

First, Dr. Chambers' review of the medical records led to his conclusion that Mr. Overton has a possible sedentary RFC. While that conclusion itself is vague, Dr. Chambers' RFC assessment in terms of Mr. Overton's limitations on standing, walking, sitting, lifting, etc. – again based on his review of the medical records – is entirely consistent with a sedentary RFC.

Dr. Campbell's report includes her opinion that when Mr. Overton was not having an exacerbation of symptoms, he would be limited in standing, walking, and postural activities to fewer than three hours a day, and in lifting and carrying to 20 pounds fewer than two hours a day and 10 pounds fewer than four hours a day. Setting aside Mr. Overton's description of the extent and frequency of his incapacitation, Dr. Campbell's opinion is consistent with a sedentary RFC.

A physical examination by Carl R. Dahl on January 17, 2007, apparently for "claims purposes" unrelated to his back and kidney pain, noted an overweight male who walks normally

13

and has no difficulty arising from a chair or changing positions on the examining table.  R. 278.  It would be inappropriate for this Court, or for an ALJ, to cherry pick one record from 155 pages of VAMC records and attach too much significance to it.  However, I have reviewed all the medical records in the record of this case.  I have not found any record that provides objective medical evidence inconsistent with a sedentary RFC.  Nor has plaintiff cited any such record in his brief on appeal.

Second, two vocational specialists have expressed the opinion that an individual with a sedentary RFC could do the work of a computer programmer as such work is normally done.  There is no evidence in the record contrary to those opinions.

Third, the record shows that Mr. Overton essentially stopped working after 2001.  If that was for medical reasons, then it is somewhat difficult to reconcile with the facts that he acknowledges performing a computer job in 2003, R. 21-22, and that he does not claim a disability onset until March 15, 2006.  If he decided to retire after 2001 for non-medical reasons, then that casts some doubt on the claim that the reason he was not working in 2006 and 2007 is entirely related to his disability.

Finally, I note that ALJ cited physical therapy records from October 2006.  R. 13-14.  Mr. Overton was seen in the physical therapy department of the VAMC on October 5, 2006 for complaints of back and abdominal pain.  R. 291-92.  The therapist reviewed a lumbar MRI and lumber x-rays taken in September 2006 and evaluated his range of motion, posture, gait, and balance.  The therapist then provided instruction on exercises.  *Id.*  When the therapist saw Mr. Overton three weeks later, on October 26, 2006, he reported that two or three of the exercises aggravated his back.  R. 290.  However, the therapist noted that "with instruction (on the exercises) this date, pain symptoms were controlled and or eliminated."  *Id.*  When one considers

the description of Mr. Overton as having been "overweight" (at 246 pounds), *e.g.,* R. 278, and the totally sedentary daily existence that he described, one wonders whether lifestyle and lack of appropriate exercise might be a cause of Mr. Overton's perception that he could not perform even sedentary work.

    C. Evidence Supporting Mr. Overton's Position.

First, of course, there is his own description of his pain, the effects of his pain medication, and the extent of his incapacity. That evidence, as I have indicated, is consistent with an inability to perform any competitive employment during the relevant time period.

Second, there is the opinion of Dr. Campbell that, based upon his incapacitation as Mr. Overton has described it, he cannot work. Plaintiff argues that the ALJ inappropriately gave "no weight" to the opinion of Velma Campbell, M.D. I disagree. The ALJ wrote, "[a]s for the opinion evidence, the undersigned has considered the report of Dr. Velma Campbell, but has given the report little weight because Dr. Campbell tried to impose some work limitations while acknowledging that the "'evaluation has not so far explained the (claimant's) pain, but was still in progress.'" R. at 16.

Although the opinion of a treating physician who has seen a claimant over a period of time is entitled to substantial weight, *see, e.g., Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003), Dr. Campbell saw Mr. Overton only once. Of course, that was one more time than he was seen by Dr. Chambers. The main point, however, is that the ALJ gave Dr. Campbell's opinion little weight because there was no medical explanation for the pain that Mr. Overton claimed, and Dr. Campbell felt that more evaluation was needed. This is a consistent theme in the medical records.

Plaintiff notes that the ALJ did not mention Dr. Chambers' opinions at all in his written decision. The ALJ did, however, state that he reviewed the "entire record." R. 15. The Tenth Circuit's general practice "is to take a lower tribunal at its word when it declares that it has considered a matter." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). More importantly, the task for this Court is to determine whether the ALJ's decision is supported by substantial evidence, and that includes evidence in the record whether or not it was mentioned or even considered by the ALJ.

Mr. Overton also argues that the ALJ asked hypothetical questions of the vocational expert, Mr. Jerry Gravatz, which did not accurately reflect his condition. Specifically, Mr. Overton takes issue with the fact that the ALJ's questions did not include a hypothetical claimant with side effects from pain medications. However, in his written decision the ALJ noted that "the vocational expert was asked various hypothetical questions regarding the claimant's ability to work." R. at 16. Again, reviewing courts generally "take a lower tribunal at its word when it declares that it has considered a matter." *Hackett*, 395 F.3d at 1173. Taking the ALJ at his word that he did consider the vocational expert's answers to the hypothetical questions, including counsel's questions, the Court concludes that the ALJ's failure to include a specific reference to pain medications in his own hypothetical question does not invalidate his RFC determination.

D.  Conclusions.

I am obviously troubled by Mr. Overton's description of the intense back and abdominal pain he felt during the relevant time period and the degree to which he was incapacitated by that pain and the effects of the medication that he was prescribed for pain management. His daily existence, as he described it, was sedentary to the point of being miserable. A man in that

condition is plainly disabled and unable to work. Certainly Mr. Overton's testimony and representations regarding his pain must be considered.

However, in evaluating subjective complaints of disabling pain, an ALJ must consider "(1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the claimant's subjective allegations of pain, and (3) if so, whether, considering all the evidence, both objective and subjective, claimant's pain is in fact disabling." *Musgrave v. Sullivan,* 966 F.2d 1371, 1375-76 (10th Cir. 1992).

Here the ALJ did find that Mr. Overton's medically determinable impairments could reasonably be expected to cause the alleged symptoms." R. 16. However, the ALJ found that the objective medical evidence did not support Mr. Overton's position that his impairments did, in fact, cause the intensity, persistence and limiting effects of the pain and medication that he described. *Id.* The ALJ based his credibility determination in part on what he perceived to be an inconsistency between the subjective complaints and the medical evidence. However, he also based his credibility determination in part on his observation of Mr. Overton during the hearing. In addition he found that his RFC determination was supported by Mr. Overton's daily living activities. R. 16. Mr. Overton's description of his daily living activities does not support that finding, but even Dr. Campbell stated that Mr. Overton "is independent in activities of daily living." R. 172. That seeming inconsistency lends some support to the credibility determination.

As indicated above, this Court's task is to determine whether the ALJ's findings are supported by substantial evidence. This Court does not evaluate the evidence de novo. Having reviewed the entire record, I must conclude that there is substantial evidence in the record that is supportive of the ALJ's findings and conclusions. That is as far as I can go.

**Order**

For the foregoing reasons, the Commissioner's decision is affirmed.

DATED this 10th day of August, 2012.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge